UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Condominiums of Shenandoah
Place,

        Plaintiff,

v.

SECURA Insurance, a Mutual
Company,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-165 ADM/HB

___

Anthony Smith, Esq., Roeder Smith Jadin, PLLC, Bloomington, MN, for Plaintiff.

Dawn Gagne, Esq., Cousineau McGuire Chartered, Minneapolis, MN, for Defendant.

___

## I. INTRODUCTION

On December 16, 2015, the undersigned United States District Judge heard oral argument on Plaintiff Condominiums of Shenandoah Place's ("Shenandoah") Motion to Compel Appraisal [Docket No. 27]. For the reasons stated herein, the Motion is granted.

## II. BACKGROUND

This case arises out of an insurance coverage dispute. Shenandoah is a condominium association located in Shakopee, Minnesota with 14 multi-unit buildings. Gagne Aff. [Docket No. 39] Ex. A. Defendant SECURA Insurance ("Secura"), a property and casualty company, issued Shenandoah a property insurance policy (the "Policy") covering the one year period of April 15, 2012 to April 15, 2013. Id. Ex. B. Shenandoah alleges that Secura failed to pay for roof damages sustained on June 10, 2012 during a wind and hail storm.

**A.  The Policy**

The Policy covers physical loss to buildings in the complex caused by Covered Causes of Loss, including both wind and hail damage.  Id. at 4-32.  Coverage under the Policy does not include normal wear and tear, hidden or latent defects, or construction defects.  Id. at 42–43.  A $5,000 deductible for each of the 14 condominium buildings applies under the Policy.  Id. at 43.  The Policy additionally includes an appraisal clause if the parties are unable to agree on the amount of the loss.  It provides:

> If we and you disagree on the amount of loss, either may make written demand for an apprisal of the loss. In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the amount of the loss.  If they fail to agree, they will submit their difference to the umpire.  A decision agreed to by any two will be binding.  Each party will:
> 　　a.  Pay its chosen appraiser; and
> 　　b.  Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.

Id. at 45.  The Policy additionally requires that the insured promptly notify Secura of any covered loss.  Id.

**B.  The Claim and Appraisal Attempt**

On May 16, 2013, the property manager for Shenandoah emailed Secura and stated that Shenandoah needed to "file a claim for hail damage to the roofs, chimneys, etc., . . . that occurred during storms over the last two years."  Gagne Aff., Ex. C.  Shenandoah later submitted a Property Loss Notice, which identified June 10, 2012 as the date of loss.  Id. Ex. D.  In July and August of 2013, Secura conducted an inspection of the Shenandoah property.  Id. Exs. E, G.  The inspection revealed minor damage on the roofs—38 missing shingle tabs.  Id. Exs. E, H.  Because the repair cost was estimated to be less than the $5,000 deductible on the policy, the

claim was denied on August 13, 2013.  Id. Ex. I.

On December 26, 2013, Shenandoah's attorney sent a letter to Secura that referenced a July 30, 2013 date of loss and requested all documents pertaining to the previously denied claim. Id. Ex. J.  In response, Secura noted that the July 2013 date referenced was after the time period covered under the policy and that Shenandoah should contact its subsequent insurer.  Id. Ex. K.

On May 27, 2014, Shenandoah initiated this lawsuit in Scott County District Court. Compl. [Docket No. 1].  The Complaint asserted a claim related to hail and wind damage occurring on June 10, 2012.  Id.  Two months later, in order to complete an appraisal, the parties stipulated to stay the Scott County action.  Gagne Aff., Ex. O.  In the appraisal process, Shenandoah's Association President Tom Scott completed a Sworn Proof of Loss which states a total claim of $1,601,705.43.  Id. Ex. Q.

Secura again inspected the property on October 28, 2014—more than a year after Secura's first inspection and two years after the stated date of loss.  Id. Ex. R.  The second inspection revealed extensive damage including many areas of missing shingles and loose and missing siding.  Id. Ex. G.  According to the Secura inspectors, the Shenandoah buildings were poorly constructed from the outset, with both the shingles and siding improperly installed.  Id. Exs. F and H.

During the course of the appraisal, Secura discovered that Shenandoah had submitted a similar claim to its subsequent insurer, American Family, claiming wind and hail damage occurring on June 14, 2014.  Id. Ex. S.  On December 4, 2014, Secura rejected Shenandoah's Sworn Proof of Loss after determining that the claimed loss included additional damage from the June 14, 2014 loss Shenandoah was simultaneously pursuing with American Family.  Id. Ex. V.

Secura further notified Shenandoah that because of the June 14, 2014 date of loss, the apparent construction defects, and Shenandoah's lack of cooperation with the investigation, the dispute was no longer appropriate for appraisal. Id. Ex. W. The parties eventually agreed to withdraw from the appraisal process and lifted the litigation stay in state court. Id. Ex. X.

### C. Discovery

After lifting the litigation stay, the parties conducted discovery. Secura contends that no single witness can attest to a storm event on June 10, 2012. Specifically, Secura cites the testimony of Chris Blonigen, Shenandoah's property manager, who stated that she submitted the claim to Secura on instructions from the Association Board and that she has no personal knowledge of a June 10, 2012 storm. Id. Ex. Y at 33:3-22, 40:17-20. Association President Tom Scott denies that the Board instructed Blonigen to submit the claim. Id. Ex. Z at 9:13-21, 40:9-25, 50:16–52:8. The property's previous manager from 2004 until early 2013, Paul Bozonie, testified that he did not receive any report of storm damage or request for a claim during June 2012. Bozonie Aff. [Docket No. 38] ¶¶ 4, 8. The discovery further revealed continuous repairs to the shingles over the years due to construction defects and improper installation. West Aff. [Docket No. 36] ¶¶ 7, 12.

Both parties retained experts to evaluate the claimed loss. Shenandoah's experts concluded that significant wind gusts of up to 64 miles per hour and hail of up to 1.1" in diameter occurred on June 10, 2012 at the Shenandoah property. Gagne Aff. Exs. MM, NN. After inspecting the property, Shenandoah's experts completed a "Causation Statement" stating that it was more likely than not that the damage was due to two storm events:

> On June 10, 2012, there was sufficient hail to cause the above-referenced damage (hail bruises, impact damage to roof metals, gutters, downspouts, etc.) requiring

>full replacement of the roofs . . . On June 14, 2014, there was sufficient wind to cause the above-referenced damage (loss of shingles, flipped shingle tabs, unsealed shingles, loss of siding).

Id., Ex. NN.  In contrast, Secura's expert concluded that weather data revealed no hail in the area, with wind gusts of up to 52 miles per hour.  Id., Ex. OO.  Additionally, the expert found that although some minor hail damage had occurred at Shenandoah after its original construction, he was unable to conclude that the damage occurred on a certain date.  Id.

### III.  DISCUSSION

Secura argues that the Motion to Compel Appraisal must be denied because the appraisal clause in the Policy was not triggered.  Specifically, Secura contends that Shenandoah cannot demand appraisal because (1) there is no evidence of a covered occurrence within the policy period; (2) Shenandoah has not properly disputed the amount of the claimed loss; (3) Shenandoah did not satisfy its post-loss duties—duties that are conditions precedent to appraisal; and (4) Shenandoah waived any contractual right to appraisal.  Shenandoah disagrees, arguing that none of these issues preclude appraisal.

#### A.  Covered Occurrence

The gravamen of the parties' disagreement centers on whether the appraisal clause is triggered when it is disputed whether a loss or "occurrence" under the Policy actually took place. The Policy allows for appraisal when the parties "disagree on the amount of loss."  Gagne Aff., Ex. B.  Accordingly, Secura notes the significant factual discrepancies surrounding the storm and damage data call into question whether any loss occurred during Secura's policy period.  Secura argues that "[w]ithout an occurrence, the policy is not triggered, nor is the appraisal clause, and there cannot be a 'dispute over the amount of loss.'"  Mem. Opp'n Mot. Compel Appraisal

[Docket No. 35] 22.  Shenandoah responds that under Minnesota law, the appraisal process can properly determine the cause of loss incidental to determining the amount of loss.

In support of its position, Shenandoah cites to Quade v. Secura Insurance, 814 N.W.2d 708 (Minn. 2012), a case where Secura was again the insurer and the policy at issue included the same appraisal language—triggering appraisal when the parties are unable to agree on "the amount of loss." Quade, 814 N.W.2d at 704–05.  In Quade, the plaintiffs submitted a claim to Secura for storm damage to several farm buildings.  Id. at 704.  Secura paid for a portion of the damage, but determined that damage to three of the buildings' roofs was due to "continual deterioration over a period of time" rather than resulting from a storm.  Id.  Coverage was denied under the policy for those buildings.  Id.  The plaintiffs subsequently sued for breach of contract, maintaining that appraisal was inapplicable because the parties were disputing whether the roof damage was even covered under the policy, not the amount of cost to repair the roofs.  Id. at 705.  Secura, in contrast to this case, argued that the issue was governed by the appraisal clause in the policy.  Id.  The state district court determined that the appraisal clause included  "a causation element" and ordered the parties to appraisal.  Id.  The Minnesota Court of Appeals reversed, finding that the plaintiff's claim necessitated a determination on legal questions regarding "application of contract clauses, causation, and liability."  Id. (quoting Quade v. Secura Ins., 792 N.W.2d 478, 483 (Minn. Ct. App. 2011)).

The Minnesota Supreme Court granted review on the issue of whether a party can obtain an appraisal when the parties disagree on the "amount of loss," even when coverage questions remain.  Id.  Secura argued that the plaintiff's position confused coverage issues with the amount of loss determination.  Id. at 705–06.  That is, according to Secura, a purely coverage question

would consist of whether an event, like a wind or hail storm, is covered under the policy. Id. at 706. Secura argued that the extent and cause of the damage to the farm roofs was an issue concerning the amount of loss and therefore appropriate for appraisal. Id. The Court noted that the distinction between liability and damage questions is not always clear, but ultimately agreed with Secura. Id. at 706. As stated by the court, "in the insurance context, an appraiser's assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss." Id. at 706.

Quade is instructive and determinative here. In essence, in this case Secura takes the opposite position from its Quade argument and argues that appraisal is inappropriate here because it is an open question whether or not an occurrence took place. Secura points to latent construction and material defects, as well storm damage occurring subsequent to Secura's coverage period. However, under the Minnesota Supreme Court's reasoning in Quade, this does not bar appraisal. In Quade, the Court found that determining the "amount of loss" required "separating loss due to a covered event from a property's preexisting condition." Id. at 707. The same is true here. A determination must be made to differentiate between the damage, if any, caused by the June 10, 2012 storm, and the damage that may have been preexisting or caused by later storm events. In this case, just as in Quade, "a determination of the 'amount of loss' under the appraisal clause necessarily includes a determination of causation." Id.

Secura has attempted to distinguish Quade by labeling it as a simple case that did not present the same complicated causation questions at issue here. But just because the causation determination may be more difficult here does not foreclose that to accurately determine the "amount of loss," some causation questions must be answered. Secura cited to Natureview Vista

Twinhome Assocation v. Phoenix Insurance Company to support its position that a factual dispute regarding whether a covered loss occurred would preclude appraisal. Civ. No. 09-1983, 2011 WL 221616 (D. Minn. 2011). But that case predated Quade and this Court is required to apply substantive state law in this diversity case. See Shady Grove Orthopedic Assocs., PA v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (Stevens, J., concurring) ("It is a long-recognized principle that federal courts sitting in diversity apply state substantive law and federal procedural law." (internal quotation omitted)). Under Minnesota precedent, appraisal is warranted.

### B. Amount of Loss

Secura next argues that appraisal should not be ordered because Shenandoah has failed to properly dispute the amount of loss. Secura emphasizes that the Sworn Proof of Loss completed by Association President Tom Scott claims $1.6 million in damage for the June 10, 2012 storm event, while the claim submitted to American Family for the June 14, 2014 event seeks the same amount of coverage. According to Secura, the $1.6 million number is unsubstantiated as Scott testified that he is unaware where the Proof of Loss estimate came from and none of the Shenandoah representatives can state what portions of its damage relate to the June 10, 2012 event. In sum, Secura asserts that "[g]iven that none of Shenandoah's documents or representatives are able to substantiate what portion, if any, of the repair estimate submitted to both SECURA and American Family for separate storm events are actually related to an occurrence during SECURA's policy period, Shenandoah's Sworn Statement in Proof of Loss is essentially worthless, and fails to create a dispute regarding the amount of loss." Mem. Opp'n Mot. Compel Appraisal at 26.

This argument is without merit. Again, Secura is contesting causation. Shenandoah has

submitted the $1.6 million Proof of Loss Statement to Secura—Secura clearly disagrees with this amount. Whether those repair amounts cited were sustained in the June 10, 2012 storm event is an issue of causation that can properly be investigated during appraisal.

### C.  Post-Loss Duties

Secura also argues that Shenandoah failed to comply with its post-loss duties in several ways and such duties are conditions precedent to appraisal.

First, Secura argues Shenandoah was required to provide prompt notice of a loss under the Policy, and Shenandoah breached this obligation by waiting almost one year to report the claim. Secura posits that this delay was prejudicial in that the property continued to deteriorate between the June 10, 2012 event and the report date. The Court agrees that determining causation here has been complicated by Shenandoah's delayed reporting. However, Secura provides no case law in support of its contention that a year long delay rises to such a prejudicial level as to render appraisal inappropriate and has pointed to no policy language specifying a specific time period within which an insured must report a claim. Without more, the delay raises a fact issue and is not prejudicial as a matter of law.

Second, Secura faults Shenandoah for not being forthcoming with information on the extent of loss suffered compared with other property damage and further accuses Shenandoah of misrepresenting its claim. Specifically, Secura again highlights that Shenandoah has withheld certain documents during the previously attempted appraisal and submitted the same repair estimate to both Secura and American Family. Secura also points to Association President Tom Scott's admission that he is unaware of how the $1.6 million Proof of Loss Statement amount was derived.

Secura cites a Southern District of Florida case wherein the court found a condominium association did not comply with its post-loss duties by failing to account for the damaged property and by providing an unprepared association representative for an Examination Under Oath. See 200 Leslie Condo. Assoc., Inc. v. QBE Ins., 965 F. Supp. 2d 1386 (S. D. Fla. 2013). The precedential value of this case, however, is minimal. 200 Leslie evaluated Florida law, and Secura has provided no guidance on Minnesota precedent. Moreover, the Court finds the behavior in 200 Leslie more egregious than Shenandoah's alleged actions or, more appropriately, inaction here. The appraisal process will assist in differentiating the damage between the Secura and American Family claims.

**D. Waiver**

Lastly, Secura argues that Shenandoah waived its contractual right to appraisal through its "delays, conduct, and written stipulation." Mem. Opp'n Mot. Compel Appraisal at 31. Noting that Minnesota courts have not explicitly addressed waiver of an appraisal clause, Secura draws on law addressing the waiver of a right to arbitration. Under Minnesota law, a party urging waiver of an arbitration clause must show that the party allegedly waiving such a right had knowledge of the right in question and the intent to waive that right. See Comty. Partners Designs, Inc. v. City of Lonsdale, 697 N.W.2d 629, 634 (Minn. Ct. App. 2005).

Secura again raises many of the above addressed arguments in asserting the delay resulted in prejudice to its defense. Secura specifically emphasizes that Shenandoah commenced suit in 2014 and only later stipulated to staying the litigation to have the amount of loss resolved through appraisal. Later, Shenandoah joined in a stipulation to stay the appraisal, noting that "issues have arisen that the parties agree are outside the scope of appraisal to decide." Gagne

Aff. Ex. X.  However, as Shenandoah argues, this stipulation was to <u>stay</u> appraisal, not to dismiss an appraisal demand.  Simply because at one point the parties believed the scope of the inquiry to be beyond appraisal does not mean that the parties cannot now return to the process.  Secura's waiver argument is unavailing.

In sum, this case is appropriate for appraisal as soon as practicable.  Fact questions abound surrounding the amount of loss and, necessarily, the cause of the loss.  The appraisal panel will make the initial judgment call on these factual determinations.  Should Secura conclude that coverage issues remain after the factual determinations occur (i.e., if the damage is even covered under the policy), it may later raise those issues with this Court.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Condominiums of Shenandoah Place's Motion to Compel Appraisal [Docket No. 27] is granted.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 16, 2016.